## BOWLER *v.* STATE, 41 Miss. R., 570.

### FALSE PRETENSE.

In all indictments for felony, it is necessary to charge that the offense was committed "feloniously."

The Rev. Code, 630, art. 357, which provides, "that offenses at common law indictable and punishable by statute, may be indicted, and described or charged according to the common law or statute; and on conviction shall be punished as prescribed by statute," &c., does not apply where the grade of the felony—where the grade of the common law offense—has been increased by statute from a misdemeanor to a felony, the misdemeanor being merged in the felony.

Under an indictment for obtaining money under false pretenses, the pretense must be fully proven by the state.

When the subject-matter of a negative averment lies peculiarly within the knowledge of the other party, the averment is to be taken as true, unless disproved by that party. 35 Miss., 210.

That which amounts to mere possibility only, or to conjecture or supposition, is not what is meant by reasonable doubt. The doubt which should properly induce a jury to withhold a verdict of guilty should be such a doubt as would reasonably arise from the evidence before them. 13 S. & M., 210.

To sustain an indictment for obtaining money under false pretenses, it must be shown not only that the pretences were false, but also that they were made with the design of obtaining money, and that the money was paid in consequence of the false pretenses.

Error to Lowndes circuit court. FOOTE, J.

Pleasant Bowler was indicted at the February term of the circuit court of Lowndes county for obtaining money under false pretenses.

The indictment charges that, " on the 30th day of October, 1866, Pleasant Bowler, contriving and intending fraudulently and deceitfully to cheat and defraud one James Lull, clerk of the Columbus Colored Baptist Church, of his goods, chattels, and money, falsely and fraudulently did, knowingly and designedly, pretend to the said James Lull that he was a regularly ordained minister of the Baptist church, in good and regular standing; whereas he, the said William Bowler, was not a regularly ordained minister, in good and regular standing; and that the said Bowler, by means and color of said false pretences, did falsely and fraudulently obtain from said Lull the sum of $125, the property of said Lull.

The prisoner moved to quash the indictment, because the offense is not charged to have been committed feloniously. The motion was overruled, and defendant excepted.

On the trial, for the state, Noah Goff testified that he knew defendant. He came to Columbus in the spring of 1866, and preached. He left, stating that he was going to Europe on a mission for the benefit of the colored church. He returned to Columbus in the fall, remained ten days, and preached for witness' church. The deacons of the church asked him if he would accept the pastorate of their church. He replied that he would, if they would give him $500 a year, and his board and clothes, and pay him one hundred dollars in advance; that the church could consider of his proposition, and advise him of their decision at Aberdeen, where he contemplated going. He was advised by letter of the acceptance of the proposition, and was requested to come down and take charge immediately. He came and took charge of the church, and received $125 from James Lull. Prisoner continued in charge of his pastoral duties some three months, when, owing to difficulties in the church, he was discontinued. The cause of the difficulty was, that some of the members believed the prisoner to be a bad man, an impostor, and no minister. He promised, when he took charge, to show his credentials; and when requested to comply, he refused, only offering other papers entirely unsatisfactory. If the church had not believed defendant to have been a minister, they would not have employed him. The church first approached him to accept the pastorate. The mere representation that defendant was a minister was not sufficient to induce the church to pay him the money; it was given for his services, the same being the consideration. Witness asked defendant to show his credentials; he never showed them, but stated that he had them in his pocket. He professed to have lost a carpet-bag in Chicago, containing some valuable papers, but after this loss he told witness he had his credentials in his pocket.

Some complaint having been made about the church, it was closed on a night that defendant was to preach. Defendant became offended, and of his own accord went off, and carried some of the members with him. Witness afterwards invited defendant to join them on a sacramental occasion, but he refused.

Harrall Blewitt testified that defendant was a bad man; he

cursed and demeaned witness in an unchristian manner; witness had seen him under the influence of liquor.

W. H. O'Neal testified that he was the magistrate before whom the preliminary examination was had; that defendant made his voluntary statement, in which he stated that as he was passing through Chicago he lost his carpet-bag, and in it were his credentials as a minister of the gospel.

Roland Patterson, for the defense, testified that defendant discontinued his pastoral charge in consequence of a difficulty in which he was not censurable. The church split, the largest portion going with the defendant; that he is now the pastor of the dissenters, preaches regularly, and is believed to be a good man, with the love of God in his heart. Witness had not been deceived in defendant; that he talked like one educated in the ministry, and was familiar with the forms and ceremonies of the church.

This last witness was corroborated by a number of other witnesses.

Defendant offered, as evidence, his license to solemnize the rights of marriage by the probate court of Logan county, Ohio, in which he is described as a minister of the Baptist church. The state objected to its introduction, and the court sustained the objection, and defendant excepted.

Defendant offered to read as evidence a paragraph from one of the Richmond papers in reference to "Rev. Pleasant Bowler, pastor of the First Colored Baptist Church." The state objected; the court sustained the objection, and the defendant excepted.

The jury returned a verdict of guilty. A motion was made for a new trial and overruled. The defendant then sued out this writ of error, and brings his case to this court.

*W. W. Humphries* and *W. S. Barry*, for plaintiff in error.

1. The offense with which the prisoner is charged is a felony by the Rev. Code, 591, art. 105, and the indictment should charge that it was committed "feloniously." Wharton Am. Cr. Law, 399; Archbold Cr. Pl., 300.

2. The indictment does not charge the common law offense of

a cheat. It is a misdemeanor, and defined to be "the fraudulent obtaining the property of another by any deceitful and illegal practice or token, which affects or may affect the public, such as is public in its nature, and calculated to defraud numbers; to deceive people in general." 1 Lead. Cr. Cases, 11; 1 East P. C., 817; Russ. on Cr., 282; Wharton Am. Cr. Law, 2056; 3 Greenl. Ev., 84.

3. When the statute makes that a felony which before was only a misdemeanor, the misdemeanor is merged, and cannot thereafter be prosecuted. 1 Russell, 50; 3 Barn. & Ald., 161; 1 Pick., 39; 12 Mass., 455; 1 Pick., 45.

4. The *onus probandi* as to the falsity was on the state. "When the subject-matter of a negative averment lies peculiarly within the knowledge of the other party, the averment is taken as true, unless disproved by that party." He must not only have the knowledge, but the means to testify and exhibit it to the court must be peculiarly within his reach. 1 Greenl. Ev., 111, 112; 35 Miss., 210; 5 Humph., 9.

5. The verdict was not warranted by the proof.

*C. E. Hooker,* attorney general.

ELLETT, J.:

This is an indictment against the plaintiff in error for obtaining money by false pretenses under article 100, Rev. Code, 591.

The substance of the charge is that the accused falsely pretended to be a regularly ordained minister of the Colored Baptist Church in good standing, and thereby induced the church in Columbus to call him as their pastor, and to pay him the sum of $125.

A motion was made in the court below to quash the indictment on the ground that the offense is a felony, and was not charged to have been committed "*feloniously.*" The offense of obtaining money or goods by false tokens or pretences, to any amount, however small, is made by the statute a felony, inasmuch as it is punishable by imprisonment in the penitentiary. Rev. Code, 630, art. 348.

By the 3d section of the article, creating county courts, approved November 24, 1865; page 68, the obtaining of goods,

money, or other property by false pretences, under the value of one hundred dollars, is made a misdemeanor, and may be prosecuted in the county court. This act so modifies the offense that it is now a felony only when the indictment charges the money or goods obtained to have been of the amount or value of one hundred dollars. The offense charged in this indictment is, therefore, a felony, the amount being over that sum. It is well settled that the word " feloniously " is indispensable in every indictment for a felony,[1] and hence the motion to quash this indictment ought to have been sustained.

It is suggested that the indictment may have been upheld in the court below as for a cheat at common law, by virtue of the 357th article of the Rev. Code, p. 630. But the common law misdemeanor of obtaining goods by false pretences is made by our statute a felony where the amount or value of the goods, &c., exceeds $100, and is, therefore, no longer indictable as at common law, the misdemeanor being merged in the felony. And, besides, in this case the indictment does not charge a cheat that would be indictable at common law. The article last alluded to cannot apply where the grade of the common law offense has been increased by statute from a misdemeanor to a felony, otherwise a person might be indicted for a misdemeanor and punished for a felony.

Nor is the defect cured by Art. 7, Rev. Code, 573, for the objection was taken by motion to quash the indictment before plea pleaded.

The instructions given for the state, and refused on behalf of the prisoner in the court below, are also made the subject of exceptions.

The jury were instructed, in substance, that if they believed the accused made the representations charged in the indictment, to wit, that he was a regularly-ordained minister of the Baptist church, and in good standing, and thereby obtained the money, they must find him guilty, unless he had shown that he was at the time a regularly-ordained minister of the

[1] Wharton Am. Cr. Law, 399 ; State v. Murdock, 9 Mo., 739; State v. Gilbert, 24 Mo., 365; Rex v. Gray, L. & C., 365; Mears v. Com., 2 Grant, 385; 2 Hawk., c. 25, § 55; 2 Hale, 184.

gospel, and in good standing in said church; and the court refused to instruct them, that the burden of proving these allegations was upon the state.

The general rule in cases of this kind is, that the falsity of the pretences must be clearly proved. Roscoe on *Ev.*, 445. Exceptions to this rule are sometimes admitted in reference to the proof of negative averments. In regard to these, the rule is well defined in Easterling v. The State, 35 Miss., 210; where it is said: "The rule is, that when a fact is peculiarly within the knowledge of one of the parties, so that he can have no difficulty in showing it, the presumption of innocence or of acting according to law will not render it incumbent on the other side to prove the negative." The cases usually cited to illustrate this principle are where licenses are required by the local law to justify certain acts, as retailing, peddling, keeping tavern, and the like, and parties are indicted for doing the acts without the license. In such cases, the fact is peculiarly within the knowledge of the party; if he has the license, he can produce it without trouble or difficulty; and the license, if produced, is admissible in evidence, and is conclusive in his favor; and he is required to show it, or the inference will be drawn against him, that he has not obtained the necessary license. This is in derogation, to a limited extent, of the general presumption of innocence; but it is a rule of convenience, and, restrained within proper bounds, cannot well work injury or hardship.

But we do not think the present case can be embraced within its operation. No mode is prescribed by law for authenticating the proceedings of ecclesiastical bodies. Nobody is authorized to certify copies from their records, so as to make them evidence in courts of justice. Their certificates, in the form of credentials to ministers, would stand only on the footing of hearsay. The proceedings of such bodies can only be proved by sworn copies, or by witnesses who were present, or, perhaps, to a certain extent, by general reputation.

We have no judicial knowledge of the existence of any such body as the "Colored Baptist Church" in Mississippi, nor can we know where or how its ministers receive their ordination.

The accused in this case may have been ordained in a distant state. He may have exercised the functions of the ministry in Virginia, or Ohio, or both. It does not appear that he had resided in Mississippi before his advent in Columbus, in the fall of 1865. If ordained in another state, or if he had exercised his sacred office in other states, the certificate of his ordination would not be original evidence of the fact, nor could he compel the attendance or procure the depositions of witnesses. He may have peculiar knowledge of the fact, but it does not at all appear that he has any peculiar facility in making the proof of it.

And then, as to his good standing in the church, he is required also to prove that. We suppose that when the good standing of a minister in his church is spoken of, the question is whether he has been brought under censure or subjected to discipline by the authorities of the ecclesiastical body to which he belongs. To establish his good standing, he must show, not only that he has not been deposed or suspended from his office, but that there are no charges, and perhaps that there are no evil reports abroad concerning him. To require this of the accused, would be to throw upon him the proof of a negative of the most difficult and oppressive character.

We think the instructions of the court on this point were erroneous.

The court also charged the jury that " a reasonable doubt is not vague conjecture, nor mere hypothesis, but a sentiment clear and strong, arising in the mind of an enlightened and conscientious jury, which, upon a full survey of the facts, forbids its going forward to a conviction.

It is not easy to give a definite idea of what is a reasonable doubt. It is certainly not a mere conjecture or hypothesis, not founded on a reasonable view of the evidence. " That which amounts to mere possibility only, or to conjecture or supposition, is not what is meant by a reasonable doubt. The doubt which should properly induce a jury to withhold a verdict of guilty should be such a doubt as would reasonably arise from the evidence before them." Cicely v. The State, 13 S. & M., 210. We do not think it need be a " clear and strong " doubt; the proper word is " reasonable; " that is, just, rational, con-

formable or agreeable to that faculty of the mind by which it distinguishes truth from falsehood, and good from evil, and which enables the possessor to deduce inferences from facts, or from propositions. It implies a want of that fullness and completeness of proof which would enable the mind satisfactorily to draw the conclusion of guilt from the facts in evidence. "A sentiment clear and strong, which forbids the mind to go forward to a conviction" of the accused, might seem to favor the idea that there should be a reasonable certainty of his innocence in order to justify his acquittal. We think the expression used was too strong, and that the instruction was liable to the exception taken to it.

Another exception is, that the court refused a new trial. We have carefully considered the evidence, and do not think it was sufficient to sustain the verdict. The false pretence must be made with the design to obtain the money. That is clear, and the jury were so charged. The evidence for the state satisfies us that the pretences relied on, whether they were true or false, were not made with any design to obtain the money, or even to procure an employment as pastor of the church. The accused did not seek the place. The congregation, or their representatives, the deacons, as the proof shows, sought him, and invited him to become their pastor. He stated his terms, and left them to reflect upon the subject, and to write to him their conclusion. No doubt he had represented himself to be a minister, and if they had not believed him to be one, they would not have called him. Whether he was so or not, we do not undertake to decide. But so far as the proof shows, he did not take any step or use any means to induce the prosecutors to employ him as their preacher.

Moreover, the evidence also shows, that the money was not paid to him in consequence of his representation that he was a minister, but as compensation for services actually rendered by him in his ministerial capacity.

The representations or pretences are therefore not so closely connected with the act of obtaining the money, as if they were admitted to have been false, to justify a conviction on this indictment.

The judgment will be reversed, the indictment quashed, and the cause remanded for further proceedings, by a new indictment or otherwise, in the court below.