STATE *vs.* JOHN J. MURPHY, *alias* JOHN DOE.

When no statute defines felony, and no statute prescribes a form of indictment, the word " feloniously " should be used in indictments charging offences which were felonies at common law, but in other indictments the word is not necessary, and if used may be considered surplusage.

Forgery at common law was a misdemeanor. Hence in Rhode Island an indictment for forgery need not contain the word " feloniously."

*Semble,* The essence of the offence, forgery, being the "intent to defraud," that for this reason, also, an indictment for forgery need not in Rhode Island contain the word " feloniously."

When several cognate acts are by statute forbidden disjunctively, an indictment may ordinarily charge them all conjunctively in a single count.

Hence, when a count in an indictment charged the defendant with having in his custody a forged order, and also with uttering and publishing it as true,

*Held,* that the count under Pub. Stat. R. I. cap. 243, § 1, was not bad for duplicity.

But when a count in an indictment for forgery failed to give the name of the person to

whom the forged instrument was given, and also failed to state that it was given to some person to the grand jurors unknown,

*Held*, that the count was bad from insufficient description.

When an indictment for forgery charged the uttering of a forged order on the A. Co., which was a chartered corporation, and the prosecution failed at the trial to prove an organization of the A. Co. under its charter,

*Held*, that a verdict of guilty was against the evidence, and should be set aside.

DEFENDANT'S petition for a new trial.

*May* 7, 1892. TILLINGHAST, J. The defendant petitions for a new trial on the following grounds, viz., *first*, because of erroneous rulings, by the court below, in matters of law; *second*, because the verdict was against the evidence, and the weight thereof; *third*, because of newly discovered evidence; and *fourth*, because the defendant did not have a full, fair, and impartial trial. The indictment, omitting the formal part thereof, was in the following form, viz.: —

"That John J. Murphy, *alias* John Doe, of Pawtucket, in said County of Providence, on the fifteenth day of January, in the year of our Lord one thousand eight hundred and ninety one, with force and arms, at Pawtucket aforesaid, in the aforesaid County of Providence, falsely and fraudulently did make, forge, and counterfeit a certain order and request for the delivery of goods, which said order and request is of the tenor following, that is to say, —

PAWTUCKET, Jan. 14, '91.

Pawtucket Steam & Gas Pipe Co.

Please to deliver to Bearer — 1 — 16 in. Stillson wrench.

1 — 18 "       "       "

2 — ¾        St. cocks.

3 — 1 in. "       "

6 — ¾ x ¼ sur yts.

Oblig'd'    WM. L. GRAHAM,

379 Main St.                                    E. F. GRAHAM,

with intent thereby then and there to injure and defraud the said Pawtucket Steam and Gas Pipe Company, a corporation legally created, organized, and located at said Pawtucket, against the form of the statute in such case made and provided, and against the peace and dignity of the State.

"*And the jurors aforesaid*, upon their oaths aforesaid, do further present that said John J. Murphy, *alias* John Doe, on the

day, month, and year last aforesaid, with force and arms, at said Pawtucket, in the county last aforesaid, did have in his custody and possession a certain false, forged, and counterfeit order and request for the delivery of goods, to wit, tools, which said order and request is of the tenor following, that is to say : —

PAWTUCKET, Jan. 14, '91.

Pawtucket Steam & Gas Pipe Co.　Please to deliver to Bearer

1 — 16 in. Stillson wrench.

1 — 18 "　　"　　"

2 — ¾ — St. cocks.

3 — 1 in. "　　"

6 — ¾ x ¼ sur yts.

Obligd'　　　　　　Wm. L. GRAHAM,

E. F. GRAHAM,

and that the said John J. Murphy, *alias* John Doe, did then and there feloniously utter and publish the same as true, with intent thereby then and there to defraud the Pawtucket Steam and Gas Pipe Company and others, he, the said John J. Murphy, *alias* John Doe, then and there knowing the same to be forged, false, and counterfeit, against the form of the statute in such case made and provided, and against the peace and dignity of the State."

Before the case was opened to the jury in the Court of Common Pleas, the defendant's counsel moved to quash the indictment, on the ground that the first count thereof was defective, in that it did not contain the word "feloniously," and that the second count was defective for duplicity, and also because it did not give the name of the person to whom the order in question was supposed to have been uttered.

This motion was overruled by the court, to which ruling the defendant duly excepted. The first question, therefore, is, whether this ruling was correct. As to the first objection which the defendant made to the indictment, namely, that the first count thereof did not contain the word "feloniously," we are of the opinion that it was not well taken. We understand the rule of pleading in criminal cases to be, that in the absence of any statutory provision as to what constitutes a felony, or as to the form of the indictment, the word "feloniously" should be used in all cases where the offence charged was felony at the common law, and that in all other

cases said word is not essential; but if used by the pleader it may be rejected as surplusage. In several of the United States, there is a statutory provision that all offences which are punishable either by death or by imprisonment in the state prison shall be felonies. There is no statute in this State, however, declaring what crimes are felonies and what are misdemeanors; nor has it ever been decided, so far as we are aware, what constitutes a felony. We must, therefore, resort to the common law, in order to determine the question. Felony is ordinarily defined to be an offence which occasions a total forfeiture of either lands or goods, or both, at the common law, and to which capital or other punishment may be superadded according to the degree of the guilt. 1 Bishop on Criminal Law, § 448; 4 Blackstone Comment. 94–96; 1 Russell on Crimes, *42. Of course it is to be borne in mind that this definition of felony is mainly historical, and shows what it *was* several centuries ago, while it conveys only a faint conception of what it is *now*. In fact there is not, nor ever was practically, any such thing as felony in the United States. For while we speak of certain crimes, such as larceny, robbery, burglary, rape, arson, murder, etc., as felonies, yet it is mainly because we have been taught that at the common law they are so denominated. But when we come to apply the ancient English test of felony as set forth in the above definition, we find that there is not, strictly speaking, any such crime known to our law. Indeed, the rigor of the common law itself has been so far modified by statute in England that there now remain but very few of the characteristics of the ancient crime of felony. The change in the form of the indictment, however, has not kept pace with the change in the consequences of the crime, so that it is still necessary to allege in all those cases where the crime was a felony at the common law, and where the statute has not provided what shall constitute the offence, or prescribed a form of indictment, that it was done " felo-niously." *Edwards* v. *The State*, 25 Ark. 444, and cases cited; *Mott* v. *The State*, 29 Ark. 147; *Cain* v. *The State*, 18 Texas, 387, and cases cited; *Bowler* v. *The State of Mississippi*, 41 Miss. 570; *State* v. *Gilbert*, 24 Mo. 380; *Gray's Case*, Leigh & Cave, Crown Cases, 365, 371; *Regina* v. *Gray*, 9 Cox Crim. Cases, 417; *Mears* v. *Commonwealth*, 2 Grant's Cases, Pa. 385.

The question, then, which presents itself in this case is, whether forgery was a felony at the common law. We do not find that it ever was. The definition of forgery at common law as given by Blackstone, 4 Comment. 247, is, " the fraudulent making or alteration of a writing to the prejudice of another man's right." As given in 2 East, Pleas of the Crown, 861, which is supported by Bacon Abr. Forgery, B, and followed· in 2 Russell on Crimes, 358, " the counterfeiting of any writing, with a fraudulent intent, whereby another may be prejudiced,·is forgery at common law." Wharton, in his excellent work on Criminal Law, vol. 1, § 654, says : " By the common law, forgery is a misdemeanor. By statutes passed in England and the United States, various kinds of forgery are made felonies. Whether in particular cases the statute has absorbed the offence is a matter of special statutory construction. It may be generally stated that, unless the statute in its terms undertakes to be absorptive, establishing a statutory offence coextensive with offence at common law, forgery may still be pursued as a common law misdemeanor in cases to which the statute does not reach, in those States where a common law criminal jurisdiction exists. On the other hand, when the statute in its terms is coextensive with the common law, then the statutory remedy must be exclusively followed ; and eminently important is it for the pleader to recollect this in cases where by statute the offence is made a felony." The same author, in giving a form of indictment for forgery at common law, 1 Precedents of Indictments and Pleas, 264, does not use the word " feloniously." The same is true of the form given in 2 Bishop on Criminal Procedure, § 357 ; see, also, Train & Heard's Precedents, 223, 224. According to 1 Hale's Pleas of the Crown, 682, 683, it appears that by the statute of 5 Eliz. cap. 14, forgery was not made a felony unless it was a second offence. It has been held by very high authority that, even in cases where certain crimes are declared by the statute to be felonies, if the felonious intent constitutes no part of the crime, that being complete under the statute without it, and depending upon another and different criminal intent, the rule requiring the use of the word " feloniously " can have no application. Thus in the *United States* v. *Staats*, 8 How. U. S. 41, which was an indictment under the Act of Congress approved March 3, 1823,

making the forging of any deed, power of attorney, order, receipt, etc., for the purpose of obtaining or receiving from the United States any sum or sums of money, etc., a felony, it was held that the indictment was sufficient to charge the offence without the use of the word " feloniously." In delivering the opinion of the court, Mr. Justice Nelson said : —

" The general rule is, that the charge must be laid in the indictment, so as to bring the case within the description of the offence as given in the statute, alleging distinctly all the essential requisites that constitute it. Nothing is left to implication or intendment. Generally speaking, it is sufficient to pursue the words of the act; but if, in pursuing them, there should be any ambiguity or uncertainty in charging the offence, the pleader should regard the substance and legal effect of the enactment. And when words or terms of art are used in the description, that have a technical meaning at common law, these should be followed, being the only terms to express in apt and legal language the nature and character of the crime. In all cases of felonies at common law, and some also by statute, the felonious intent is deemed an essential ingredient in constituting the offence ; and hence the indictment will be defective, even after verdict, unless the intent is averred. The rule has been adhered to with great strictness ; and properly so, where this intent is a material element of the crime.

" Sir William Blackstone observes, that the term ' felony ' originally denoted the penal consequences of the crime, namely, the forfeiture of the lands and goods ; but that, by long use, it came, at last, to signify the actual crime committed.

" He further remarks that the idea of felony is so generally connected with that of capital punishment that it is difficult to separate them, and the interpretation of the law conforms to that usage ; and therefore, if a statute makes any new offence felony, the law implies that it shall be punished with death, that is, by hanging as well as by forfeiture, unless the offender prays the benefit of clergy. 4 Blackstone Comment. 97.

" This view accounts for the necessity of the averment of a felonious intent in all indictments for felony at common law, and also, in many cases, when made so by statute ; because, if it is used, in the sense of the law, to denote the actual crime itself, the

felonious intent becomes an essential ingredient to constitute it. The term signifying the crime committed, and not the degree of punishment, the felonious intent is of the essence of the offence; as much so as the intent to maim or disfigure in the case of mayhem, or to defraud, in the case of forgery, are essential ingredients in constituting the several offences. But, in cases where this felonious intent constitutes no part of the crime, that being complete, under the statute, without it, and depending upon another and different criminal intent, the rule can have no application in reason, however it may be upon authority."

In the case at bar, the essence of the offence charged is the *intent to defraud.* It is therefore complete without the use of the word "feloniously." And even though the offence was made a felony by our statute, the word "feloniously" would not be necessary under the decisions from which we have just quoted. But, however this may be, it is sufficient to say that, the offence charged not being a felony at common law, it is unnecessary to allege that it was feloniously committed.

The cases cited by the defendant's counsel, in support of his contention that the word "feloniously" is essential, are either cases in which the offence charged was a felony at common law, or was made such by the statute of the State in which it was committed. But as the case before us does not fall within either of those classes, the authorities have no bearing upon this branch of the case.

We therefore decide that the first count in the indictment is good, and hence that the ruling of the court below in this regard was correct.

The second part of the defendant's objection to the ruling of the court is, that it refused to rule that the second count in the indictment was bad for duplicity. We think this ruling also was correct. The statute under which the indictment was framed, Pub. Stat. R. I. cap. 243, § 1, provides that "every person who shall falsely make, alter, forge, or counterfeit, or procure to be falsely made, altered, forged, or counterfeited any public record, . . . bill of exchange, promissory note, . . . order, etc., with intent to defraud, and who shall utter and publish as true, or who shall procure to be uttered and published as true, any such false, forged, altered,

or counterfeited record, etc., knowing the same to be false, forged, altered, or counterfeited, with intent to defraud, shall be imprisoned not exceeding ten years nor less than two years." This statute, while it enumerates many forbidden acts, yet creates but one offence, if committed by one and the same person at the same time. The offence may be committed in various ways; but however committed, whether by forging, counterfeiting or procuring to be forged or counterfeited, or by uttering and publishing, or procuring to be uttered and published, etc., or by doing all of these together, subjects the offender to one and the same punishment. In 1 Bishop on Criminal Procedure, § 436, the author says: "It is common for a statute to declare that if a person does this, or this, or this, he shall be punished in a way pointed out. Now if in a single transaction he does all the things, he violates the statute but once, and incurs only one penalty. Yet he violates it equally by doing one of these things. Therefore an indictment upon a statute of this kind may allege in a single count that the defendant did as many of the forbidden things as the pleader chooses, employing the conjunction *and* where the statute has *or*, and it will not be double, and it will be established at the trial by proof of any one of them."

In Wharton's Criminal Pleading and Practice, 9th ed. § 251, it is laid down that, "where a statute, as has already been observed, makes two or more distinct acts connected with the same transaction indictable, each one of which may be considered as representing a phase in the same offence, it has in many cases been ruled they may be coupled in one count. Thus, setting up a gaming table, it has been said, may be a distinct offence; keeping a gaming table, and inducing others to bet upon it, may constitute a distinct offence: for either, unconnected with the other, an indictment will lie; yet, when both are perpetrated by the same person at the same time, they may be coupled in one count."

In *State v. Nolan*, 15 R. I. 529, this court recognized the rule laid down in *State v. Wood*, 14 R. I. 151, viz., that where several cognate acts are forbidden disjunctively, the complaint or indictment may ordinarily charge them all conjunctively in a single count. See, also, other cases cited in the opinion by Stiness, J.,

STATE *v.* MURPHY.

in support of said rule. See, also, *Commonwealth* v. *Hall*, 4 Allen, 305.

We are therefore of the opinion that there is but one offence alleged in said second count, and hence that it is not bad for duplicity.

As to the third and last ground of the defendant's objection to the second count, viz., that it does not give the name of the person to whom the order in question was supposed to have been uttered, we think it was well taken. The name of the person to whom the forged instrument was passed, being a material part of the description of the offence, should have been given if known, or if not known, this fact should be stated as an excuse for the omission. 2 Bishop on Criminal Law, § 379; *Buckley* v. *The State*, 2 Greene, Iowa, 162; *McClellan* v. *The State*, 32 Ark. 609; *Butler* v. *The State*, 5 Blackf. 280; *State* v. *Doyle*, 11 R. I. 574; *State* v. *Smith*, ante, p. 371.

We are therefore of the opinion that the second count is bad for insufficiency of description, and that the motion to quash the same should have been granted.

The second ground upon which the petition for new trial is based is, that the verdict was against the evidence, and the weight thereof.

The only evidence introduced at the trial, of the organization of the Pawtucket Steam and Gas Pipe Company under its charter, was the following, viz.: Charles A. Lloyd, called in behalf of the prosecution, testified that the Pawtucket Steam and Gas Pipe Company was located at Pawtucket, and that it paid him his wages. He also testified that he took his pay out of the safe; that James H. Andrews was the treasurer and D. L. Fales secretary; that witness was one of the clerks, and R. C. Thacher was the other; that Mr. Andrews owns part of the property, and Fales owns some. In cross-examination he testified that "the Pawtucket Steam and Gas Pipe Company owns all the pipe, wrenches, fittings, and stock in the shop." "Andrews does not own any of it." "Fales does not own any of it." "I meant that they owned stock in the Pawtucket Steam and Gas Pipe Company when I said they owned part of the property."

The Attorney General offered in evidence the ":Schedule " con-

taining the act of incorporation of the Pawtucket Steam and Gas Pipe Company.

After the state rested the case for the prosecution, the defendant's counsel moved that the jury be directed to bring in a verdict of not guilty, as the organization of the Pawtucket Steam and Gas Pipe Company under its charter was not shown. This motion being denied, the case was submitted to the jury upon the evidence for the prosecution. In the charge to the jury the court instructed them that, unless they were satisfied upon the evidence that the Pawtucket Steam and Gas Pipe Company had organized under its charter, it would be their duty to return a verdict of not guilty. The defendant's counsel then asked the court to charge the jury that the testimony of Lloyd to the effect that he was employed by the Pawtucket Steam and Gas Pipe Company, and giving the names of its president and treasurer, was no proof of its organization under its charter.

This instruction was refused, and the court instructed the jury that the testimony of Lloyd was evidence of the organization of the corporation, and it was for the jury to say whether or not it was sufficient to satisfy them of the fact of organization. To which instruction and refusal to instruct as requested, the defendant by his counsel then and there duly excepted. The jury returned a verdict of guilty; and the only question raised upon this branch of the case is, whether the evidence above set out was sufficient to prove the organization of said corporation. We think it was not. The evidence simply shows that James H. Andrews and D. L. Fales were doing business at Pawtucket under the name of the Pawtucket Steam and Gas Pipe Company, the former as treasurer and the latter as secretary, and that this concern owned all of the property in the shop. It also shows that an act had been passed by the General Assembly incorporating said company. But we do not think the proof was sufficient to establish the fact that any organization under said act was ever effected. It being necessary for the State to prove the organization of the company under said act, in order to show that it had been defrauded, as alleged in the indictment, and having failed to do so, the case was not made out, and the defendant was entitled to an acquittal.

The verdict was therefore against the evidence, and must be set

aside.   The other grounds set forth in the petition need not be considered.                              *Petition for new trial granted.*

*Robert W. Burbank,* Attorney General,[1] for plaintiff.

*Charles C. Mumford,* for defendant.