## R. G. ANDREWS LUMBER CO. v. MISSOURI, K. & T. RY. CO. OF TEXAS.

(Court of Civil Appeals of Texas. Dallas. March 22, 1913. Rehearing Denied June 28, 1913.)

1. NEW TRIAL (§ 44*)—MISCONDUCT OF JURORS—GROUND.

A new trial will be granted where a juror receives testimony from a secret and unlawful source because every litigant is entitled to a fair and impartial trial.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 80–85, 105; Dec. Dig. § 44.*]

2. NEW TRIAL (§ 44*) — GROUNDS — MISCONDUCT OF JUROR—WHAT CONSTITUTES.

In an action against a railway company for the negligent firing of plaintiff's sawmill, a new trial should be granted where one subpœnaed by defendant, but used as a witness by plaintiff on an immaterial matter, privately told a juror that some of plaintiff's witnesses were not telling the truth, that plaintiff's watchman did not ordinarily stay at the sawmill as he testified, and that the swab he claimed he was using in the boiler flues ·was wooden and not iron, the watchman having testified that the fires were out, and he was swabbing the boiler, when he discovered that the mill was ignited, and that he found his swab after the fire; such evidence being upon material facts, and being concealed by the juror might well have influenced him.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 80–85, 105; Dec. Dig. § 44.*]

3. APPEAL AND ERROR (§ 978*) — REVIEW—NEW TRIAL—DISCRETION OF TRIAL JUDGE.

Under Rev. Civ. St. 1911, art. 2021, providing that, where there is a motion for new trial on account of the misconduct of the jury and the misconduct be proven, a new trial may, in the discretion of the court, be granted, the determination of the trial court as to the allowance of the new trial is not conclusive, so that the matter cannot be reviewed on appeal in the absence of an abuse of discretion, the effect of the statute merely being to allow the trial court discretion in refusing a new trial where the misconduct was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3866–3870; Dec. Dig. § 978.*]

Error to District Court, Wood County: R. W. Simpson, Judge.

Action by the R. G. Andrews Lumber Company against the Missouri, Kansas & Texas Railway Company of Texas. There was a judgment for defendant, and, plaintiff's motion being overruled, it brings error. Reversed and remanded.

J. H. Beavers, of Winnsboro, Jones & Jones, of Mineola, and Harris, Suiter & Britton, of Quitman, for plaintiff in error. Alex. S. Coke, of Dallas, and Dinsmore, McMahan & Dinsmore, of Greenville, for defendant in error.

RASBURY, J. Plaintiff in error sued defendant in error for damages resulting from the destruction by fire of the sawmill of the plaintiff in error, consisting of machinery and buildings, together with certain lumber then on hand and belonging to defendant in error. It was alleged that the tracks of defendant in error are in proximity to the sawmill of plaintiff in error, and that in operating its engines over its tracks defendant in error by permitting the escape of sparks therefrom set fire to the sawmill and lumber and damaged same as alleged in the petition. Trial before jury resulted in verdict followed by judgment for defendant in error. No appeal was taken from the judgment so entered, but within the time and manner provided by law plaintiff in error removed the case here by writ of error. After verdict in the court below motion for a new trial was presented; one of the grounds urged being the misconduct of the jurors who decided the case. The misconduct of this juror and the criticism of the court's charge are the only errors assigned, and for that reason we have not stated the pleading.

[1] The first assignment in our own language and in substance, so far as sustained by any evidence, is that the court erred in refusing to set aside its judgment and the verdict of the jury for the reason that, after the jury had been sworn and impaneled and heard evidence from both sides, one of the jurors discussed the case with one of the witnesses, and received evidence and statements prejudicial to plaintiff in error.

To clearly understand the point here raised, it is necessary to state that Jerry Lee, night watchman for plaintiff in error, and Claude Dodgen, its superintendent, had testified to a state of facts which would have sustained a finding in favor of plaintiff in error. Stirrell Bates had been subpœnaed and was present at the trial as a witness for defendant in error. At an adjournment of court, while the trial was in progress, from a Saturday until Monday, counsel for defendant in error advised Bates that they did not intend to use him as a witness and excused him, but directed him to first call upon counsel for plaintiff in error, and ascertain if they desired him as a witness. He remained during trial, and was placed upon the stand by the plaintiff in error. Judgment was entered November 28, 1911. On December 7, 1911, a hearing upon the facts was had upon that part of the motion for new trial alleging misconduct by the juror and argument on the motion as a whole, and whereupon the court refused a new trial and overruled the motion.

The facts adduced upon trial of the motion in relation to the misconduct of the juror was in substance as follows: Stirrell Bates testified that he lived in East Winnsboro and was present on trial of the case at

Quitman, the county seat; that he became acquainted with J. D. Fox, one of the jurors, for the first time during the trial of the case; that during an adjournment of court from Saturday to Monday he and Fox procured a conveyance and driver from Crofford's livery stable in Quitman and journeyed together to Winnsboro; that on the following Sunday night Fox called for him in his buggy, and they returned together to Quitman; that nothing was said relative to the case on Saturday, except that when going from Winnsboro to East Winnsboro and while passing the sawmill, which had been destroyed by the fire, he casually pointed out to Fox where several of the witnesses in the case lived; that when in proximity to one of the sawmill sheds he pointed to a car on the railway track, saying that was the place "they say" the fire was set, but that Fox replied that he knew all about it, had heard enough about it to know every foot of the ground; that nothing more was said on that occasion; that he next saw Fox on the following Sunday night when they together returned to Quitman, where they arrived Monday morning at 7:30 o'clock, having lost their way twice in returning to Quitman; that he again, on the journey back to Quitman, referred to the case and mentioned the negroes who were witnesses in the case, and inquired of the juror if Jerry Lee got "tangled up" or "scared" while on the stand, to which the juror replied that Jerry "made it through all right," but that "that negro preacher, John Harris, got 'tangled up,' so that he could not tell which way he lived from Garman's gin;" that he may be mistaken, but it "seems" that Fox asked him what he thought about the case, and he "believes" he told him he did not know because he had not heard the evidence, but that, if "they" all swore like Claude Dodgen, "they" would beat the "railroad"; that Claude Dodgen "told a lie" about the flue swab; that he told the juror that he knew what the boiler flue swab was made of (Dodgen having sworn it was made of iron) because he had been fireman at the sawmill, and that it was made of wood; that he also told the juror of going to the sawmill on an occasion prior to the date of the fire and finding Jerry Lee, the night watchman of plaintiff in error, absent (Jerry Lee had testified, among other things, that he left his flue swab which was of iron in the flue when he discovered the fire, and found it there after the fire, and that he inspected the sawmill at stated periods during the night of the fire, and was in both respects corroborated by Claude Dodgen); that after their conversation witness and the juror agreed not to say anything about what took place, to just consider it talk; that the defendant in error paid him for the time he lost at $2 per day and allowed $1.50 per day for board and $6 for conveyance from Quitman to his home, etc.

J. D. Fox, the juror, testified that he met Bates while the case was being tried, and went from Quitman to Winnsboro and back with him as detailed by Bates; that he can recall nothing being said about the case while going; that after they got to Winnsboro he and Bates went down the railroad track on their way to East Winnsboro, but he does not remember Bates pointing out where certain negroes lived who were witnesses in the case; that he does not think he and Bates said much about the case coming back; that he saw George Green in Quitman the second day after the verdict was rendered, but does not remember telling Green that Bates talked "a right smart" about the case, but does remember telling Green that Bates was a "right" talkative little fellow, but that, if he talked about the case, he did not remember it; that he did not remember Bates telling him of going on a former occasion to the sawmill and finding Jerry Lee away; that, if Bates did make such statement, he cannot now recall it; that, if he told Green such things when Green talked with him, his memory was fresher then than now; that he does not know that the "sorter sulled" on Green after talking with him a while, and refused to tell what took place between witness and Bates, that he, Bates, told him about "that flue business"; that he told Bates what he heard on the outside would not affect him; that he asked Bates what he thought about the case; that he would not say Bates said Dodgen swore a lie, but he did say it was not as Dodgen told it; that when he asked Bates what he thought about the case he said, "I don't know, (but) if they all swear like Claude Dodgen they will beat it, or we will beat it," and that Claude had sworn a lie about the flue cleaner; that he did as little talking as he could do, that Bates volunteered the information, and that witness asked for and wanted no particulars about it, and that it had no weight with him; that he and Bates had breakfast together on their arrival in Quitman, and divided the expense of the team to Winnsboro; that he is not sure, but it "seems that Bates did ask him if Jerry Lee 'got tangled up' in testifying," but does not remember whether he replied to the question or not; that he believes he did ask Bates what he thought about the case; and that that was the only question he asked Bates.

George Green testified that he went to see Fox, the juror, at his home, and that before doing so he had seen Bates and received some information from him; that he told Fox that plaintiff in error was going to make application for a new trial; that he, Fox, was a juror in the case, and had driven to Winnsboro and back with Bates, a witness in the case, and that he had a statement from Bates that Fox and Bates had talked about the case, and that he could save Fox a trip to Quitman if he would just "open up" and tell all that was said; that

Fox started out by saying he could not remember just what was said, but that there was a "good deal" said; that he then said, " 'Mr. Fox, did Bates tell you that Claude Dodgen swore a lie about that flue swab?' and he said, 'Yes, I think he did;' and I said, 'Well, don't you know he did?' and he said, 'Yes, he told me that he told a lie about the flue swab;' " that he asked Fox if Bates did not tell him about going to the sawmill and finding Jerry Lee absent, and he admitted that he did; that he then asked Fox if he did not ask Bates what he thought about the case, whereupon Fox hesitated, and said his recollection was bad and that he was sleeping, and that the court had charged the jurors not to talk about the case, and that he did not want to get mixed up with the court, and refused to answer further questions. Clarence Browning testified that he heard the conversation between Green and Fox, and heard Fox admit that Bates told him that Dodgen swore a lie, and heard him also admit that Bates told him of finding Jerry Lee absent from the sawmill.

From the foregoing testimony it is clear that the juror Fox did discuss the merits of the case with the witness Bates, and did receive information from Bates concerning the credibility of two of the witnesses who had testified in the case to facts material to plaintiff in error's right to recover. The juror was told that on a previous occasion Jerry Lee was absent from his duties as night watchman. This was a material matter, since Lee had testified that he was present in and about the sawmill and made regular visits of inspection over the plant the night the fire was set, and that he would have discovered the fire if occasioned from any source other than by sparks. To prove that he was in the habit of remaining away from the mill when he should have been there attending to his duty as night watchman would tend, of course, to weaken the force of what he says he did on the night of the fire. Claude Dodgen corroborated Lee both as to his attending to his duties and the circumstance of leaving the swab in the boiler flue. This latter statement by Dodgen was said by Bates in his conversation with Fox to be a lie, for the reason that the swab was made of wood, and could not have withstood the fire. This was alike a contradiction of a material circumstance in the case, since Jerry Lee had testified, in effect, that the fire could have been set only by sparks, since the fire in the engine was out and had been out long enough for the boilers to cool sufficiently for him to "swab" them out, and that he was engaged in that duty when he discovered the fire and corroborated such statement by testifying that he found his "swab" in the boiler flue after the fire.

[2] The decisions, however, do not place the interference by the courts with jury verdicts upon the ground that the juror has received testimony from a secret and unlawful source which tends to dispute and contradict the facts introduced by either litigant in a lawful manner upon trial, but, on the contrary, place it upon the high ground that all litigants are entitled to a fair and impartial trial by jury and that essentially and in the very nature of things a juror who does not recognize the impropriety of discussing the merits or demerits of a case in which he has been sworn as a juror with witness or litigant is in no sense a fair and impartial juror. An inspection of the testimony in the instant case affords no explanation of Bates' purpose in persisting in discussing the case, nor who, if any one, he was seeking to serve or injure. He was in the employ of the plaintiff in error after the fire and was used by plaintiff in error as a witness on an immaterial matter. He was also subpœnaed on trial by defendant in error as its witness, but was discharged by defendant in error without being placed on the stand after being paid his legitimate expenses. He also in the conversation with the juror Fox denounced the witnesses of plaintiff in error. It is enough to say of him that he flagrantly and intentionally abused the proprieties, and must have known he was doing so, since he makes no claim of innocence on that score. This conclusion is further attested by the fact that he must have disclosed what took place between him and Fox, notwithstanding they agreed it should be confidential, since the record fails to show that Fox did so and none other knew the truth about it. It is not, however, so much the offending person who discusses the case with the juror that courts are concerned about as it is the effect and influence that such discussion may consciously or unconsciously exert upon the juror whose sworn duty it is to be fair and impartial. There seems but one course for the juror to pursue in such cases in order to maintain, in the light of the decisions, his fairness and impartiality, and that is to report at once to the trial judge the attempt of any one to discuss the case with him or that he thoughtlessly and in ignorance of such matters has done so himself. Such a course would mark the fact that the juror still maintained his fairness and impartiality, and would likely in most cases be an end of the matter. But to maintain silence on such questions, and to only concede the fact when it cannot be concealed, comports poorly with the high standard of conduct demanded by the responsible office of juror. It is perhaps often true that such discussion has no effect on the juror; in fact, there is in the instant case nothing to show that the juror was affected by what Bates said, or influenced the other jurors. Indeed, the juror has declared the discussions had no influence with him; but such facts and claims are material,

if at all, in rare cases, since, as forcibly said in one of the cases cited below, "if a practice of this character was permitted to go unchallenged, it would be difficult to draw the line and say when it should cease, and the best policy to pursue is to prevent it altogether. It is impossible in cases where questions of this kind arise to determine whether harm or injury or improper influence resulted and an effort to ascertain the truth in that respect would be altogether speculative." Marshall v. Watson, 16 Tex. Civ. App. 127, 40 S. W. 352; Railway Co. v. Schroeder, 25 S. W. 306; Railway Co. v. Matthews, 28 Tex. Civ. App. 92, 66 S. W. 588, 67 S. W. 788; Palm v. Chernowsky, 28 Tex. Civ. App. 405, 67 S. W. 165; Goar v. Thompson, 19 Tex. Civ. App. 330, 47 S. W. 65; Lawson v. Levy, 57 S. W. 54; Albers v. Railway Co., 36 Tex. Civ. App. 188, 81 S. W. 829; Railway Co. v. Dickens, 54 Tex. Civ. App. 637, 118 S. W. 612; Palmer v. State, 121 Tenn. 465, 118 S. W. 1022.

[3] It is contended, however, by defendant in error that under the provisions of the Act of the Legislature of 1905, p. 21, art. 2021 (R. S. 1911), when the trial court has heard the testimony upon a demand for a new trial because of misconduct of a juror and has denied same, his act is final, unless an abuse of discretion is shown. In short, that by said act the granting of a new trial on such grounds is wholly within the discretion of the trial court. The construction placed upon this statute by this court in relation to the discretion of the trial judge is that, when he has heard the testimony, he may, though misconduct be shown, either refuse or grant a new trial, rather than that his action may not in any respect be revised. Railway Co. v. Blalack, 128 S. W. 706. It is conceivable that cases of misconduct might arise which resulted in no material harm to the complaining party, but which would at the same time, under the statute, be misconduct, and because of which, in the absence of any discretion vested in the trial court, the verdict would have to be set aside under the naked provisions of the statute. The purpose of the statute in our opinion is to confer upon the trial judge the authority and provide a method of inquiring into any alleged misconduct of jurors; a practice statute, in other words, enabling the trial court to investigate alleged misconduct of the jury, and by such means preserve to litigants the fair and impartial trial guaranteed by law, rather than to confer upon him a hard and fast discretion free from review by appellate courts, and that at all times in determining whether a new trial should be awarded the issues should be adjudged in the light of the well-settled decisions of this state in such matters.

We conclude that the court below erred in refusing plaintiff in error a new trial because of misconduct of the juror Fox, and its assignment of error in that behalf should be sustained.

We overrule plaintiff in error's second assignment of error, assailing the charge of the court, for the reason that an inspection of the court's charge shows a fair and correct submission of all issues raised by the pleading and evidence of plaintiff in error, and we do not think the criticisms of same require a discussion of the charge.

The judgment of the trial court is reversed, and the cause remanded for another trial.