### GERMAN et ux. v. HOUSTON & T. C. R. CO. (No. 6197.)

(Court of Civil Appeals of Texas. Austin. May 5, 1920. Rehearing Denied June 16, 1920.)

1. **New trial** ⬯⟶53—Disqualification of juror does not render verdict void; "competent."

In view of Const. art. 16, § 19, and Rev. St. 1911, arts. 5114, 5115, 5117, 5194, 5206, a juror under 21 years of age is incompetent and disqualified, the word "competent" in the statute meaning legally qualified, but such disqualification does not render the verdict void where the question was first raised on motion for new trial.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Competent.]

2. **New trial** ⬯⟶44(1)—Conduct of jury in considering foreman's statements and a map drawn by him held to warrant a new trial.

In an action for plaintiffs' ejection from defendant's train after being carried beyond destination, the jury's consideration of its foreman's map drawn partly from information not in the evidence and the foreman's statement that he knew defendant's witnesses, and that he was credible, and that foreman had once been carried past his station and was taken to the next station and carried back without extra charge, where there was a question of contributory negligence in plaintiffs' voluntarily getting off the train between stations, constituted misconduct of jury warranting new trial.

3. **Appeal and error** ⬯⟶978(3)—Discretion of court in refusing new trial for misconduct of jury reviewable.

The discretion of the trial judge in refusing a new trial for misconduct of the jury in considering evidence of their foreman given while deliberating on verdict is subject to review upon appeal.

Appeal from District Court, McLennan County; H. M. Richey, Judge.

Suit by L. R. German and wife against the Houston & Texas Central Railroad Company. Judgment for defendant, and plaintiffs appeal. Reversed and remanded.

W. L. Eason and W. B. Carrington, both of Waco, for appellants.
Stribling & Stribling, of Waco, for appellee.

BRADY, J. L. R. German and his wife brought this suit against the Houston & Texas Central Railroad Company for damages by reason of being ejected from defendant's train near Bremond, Tex. The basis of the action was the claim that the railroad company was negligent in not informing plaintiffs of their arrival at Bremond, although the conductor had personally promised to notify them, and the ejectment of plaintiffs from the train during a hard rain, after

---

⬯⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

having carried them about a mile and a half beyond the station. Rough and insulting treatment by the conductor in ejecting plaintiff's wife and grandchild and injuries resulting were alleged.

The issues made by the pleadings and the evidence are sufficiently indicated by the answers of the jury to the questions submitted by the court. They were, in substance, that the agents of defendant did not fail to announce, in a sufficiently distinct voice to notify passengers, the arrival of the train at Bremond, and that the conductor did not fail to personally notify plaintiffs of such arrival; that the conductor did not use actual force upon Mrs. German in ejecting her, if he did eject her from the train; that the failure of defendant to take plaintiffs back to the Bremond depot was not negligence; that the conductor did not eject plaintiffs from the train; that plaintiffs knew, or by the use of ordinary care could have known, when the train reached Bremond in time for them to have alighted therefrom; that they voluntarily got off the train after it had left the station at Bremond, and that such action was contributory negligence; that the failure of plaintiffs to go to a lodging house in Bremond was contributory negligence; that the exposure to the weather was the proximate cause of the injuries, if any, to the health of Mrs. German and to German, and also of the injuries, if any, to Mrs. German's wearing apparel. The jury found that the reasonable market value of the hat and dress of Mrs. German was $26, but found that there were no damages to plaintiffs because of physical pain or mental anguish. On the verdict judgment was rendered for the defendant.

## Opinion.

[1] The first assignment complains of the refusal of the trial court to grant a new trial because one of the jurors was not competent to try the case, not being a qualified voter. The undisputed evidence shows that this juror was not 21 years of age until about 3 weeks after the trial, but the point was not raised until after the verdict, and appeared for the first time in the motion for new trial.

It is conceded by appellants' counsel that there are numerous authorities holding that a mere disqualification of a juror will not render a verdict void, but it is contended that this is not the rule when the juror is made incompetent by statute. A distinction is sought to be made between incompetency and disqualification, but we cannot see the force of the contention. The statute provides that all male persons over 21 years of age are competent jurors, "unless disqualified under some provision of this chapter." We think it is clear that the word "competent," as used in the statute, means legally qualified. A person is as much incompetent or disqualified

to serve as a juror when not a freeholder or householder, for instance, as when he is not over 21 years of age. Each of such grounds of disqualification renders him incompetent as a juror, not only as to the particular case, but in any case. Without further discussion of the question, we overrule the assignment; and in support of our holding cite the following authorities: Constitution of Texas, art. 16, § 19; articles 5114, 5115, 5117, 5194, and 5206, tit. 75, R. S. 1911; Railway v. Woodward, 26 Tex. Civ. App. 389, 63 S. W. 1051–1054; Rice v. Dewberry, 93 S. W. 719; Schuster v. LaLonde, 57 Tex. 29; Newman v. Dodson, 61 Tex. 96; Sinsheimer v. Edward Weil Co., 61 Tex. Civ. App. 209, 129 S. W. 187; Railway v. Broughton, 212 S. W. 669; Givens v. State, 103 Tenn. 648, 55 S. W. 1111; Blair v. Paterson, 131 Mo. App. 122, 110 S. W. 616; Wassum v. Feeney, 121 Mass. 93, 23 Am. Rep. 258; Johns v. Hodges, 60 Md. 215, 45 Am. Rep. 722; Salisbury v. McClaskey, 26 Hun, 262; Brewer v. Jacobs (C. C.) 22 Fed. 217; 12 Corpus Juris, 233.

[2, 3] It is next contended that the court should have set aside the verdict and granted a new trial because of misconduct of the jury. In brief, this claim is based upon the conduct of the foreman of the jury, Mr. Eaves, in showing to the jury a large map which he had himself drawn, showing Bremond station and objects in that vicinity, including distances marked to certain points, and the conduct of the same juror in having stated to the jury, in substance, that he was personally acquainted with one of defendant's witnesses, T. J. Smith, whom he had known since boyhood, and that for this reason he believed his testimony was true.

Before announcing our conclusion, we will briefly consider these two grounds of alleged misconduct. It appears that Mr. Eaves did prepare and exhibit such a map to the jury, and that he drew the same not only from the evidence, but also, in part at least, from his own knowledge of the town of Bremond and its environments, to which he had not testified. On the map he showed a hotel and lodging house, when the evidence showed but one, and he testified that he had marked the location of a semaphore near the depot, which was not shown by the evidence, and had marked certain distances not based upon the evidence, including the distance to the cattle guard, beyond which it was claimed plaintiffs were ejected from the train. While most, if not all, of the jurors who testified stated that they based their verdict entirely upon the evidence, it was shown that some of the jurors considered this map in determining locations and distances. It appeared that two or three of the jurors were at first for awarding damages to the plaintiffs in a substantial amount, one of the jurors having testified that they yielded to the

majority because they were mostly farmers, and were tired and wanted to go home.

Touching the question of the probable effect of the statement of Mr. Eaves, the foreman, that he personally knew Mr. Smith, and that he believed he was a credible witness, it was shown that the testimony of Smith was directly in conflict with plaintiffs' testimony as to whether or not the name of Bremond station was called, and as to whether or not plaintiffs were notified of the arrival of the train at Bremond. In fact, Smith testified that he personally notified them of the arrival of the train in time for them to have gotten off, which they denied. Mr. Smith also testified that when plaintiffs got off the train he had walked to the front and did not see the conductor do anything to them. Plaintiffs claimed that the conductor applied force in ejecting them from the train. Mrs. German stated that the conductor caught her by the arm and pulled her off the train into the rain and mud. The testimony of plaintiffs was to the effect that they had to cross over a cattle guard, and they had to go about a mile and a half back to the station, which took them about a half hour.

There is also another alleged ground of misconduct, consisting of the claim that Mr. Eaves, the foreman, also stated to other members of the jury that he had once made a trip near Tyler, Tex., was carried past his station, but that the conductor took him to the next station, and then carried him back to where he wanted to go, without any extra charge. At least two jurors testified that Eaves made substantially the above statement, although he denied it on the hearing of the motion for new trial. One of the issues submitted to the jury was the alleged contributory negligence of plaintiffs in voluntarily getting off the trian into the rain when carried past the station of Bremond, instead of going on to the next station and returning to Bremond on another train.

It is strongly insisted by appellee that none of these matters constituted misconduct on the part of the jury, but, if they did, the question of granting a new trial is by statute committed to the discretion of the trial judge, and, unless that discretion was clearly abused, the case should not be reversed for the alleged misconduct.

The Supreme Court, in H. & T. C. R. R. v. Gray, 105 Tex. 43, 143 S. W. 606, held that the discretion vested in the trial judge in such a matter by our statute is not final nor an arbitrary one, but its exercise may be reviewed by an appellate court, when it clearly appears that the rights of the parties have been disregarded.

This court, in the case of Dunnaway v. Austin Street Ry. Co., 195 S. W. 1159, has held to the same effect, and that, where it appears altogether probable that the statement of a juror, not based upon the evidence, had influence upon other jurors in determining material issues, it is such misconduct as entitles the injured party to a new trial, and the trial court exceeded its discretion when it overruled that contention.

The following cases may also be cited as showing a review by the appellate courts of the discretion of a trial judge in refusing to grant a new trial for misconduct of the jury.: South Tex. Mfg. Co. v. Dozier, 158 S. W. 1052; S. L. B. & M. v. Vick, 210 S. W. 250; Andrews Lbr. Co. v. M., K. & T. Ry., 158 S. W. 1194; Manes v. Case Thresh. Mach. Co., 204 S. W. 236; Fave v. Bowers, 33 S. W. 133; Goar v. Thompson, 19 Tex. Civ. App. 330, 47 S. W. 65; G., C. & S. F. Ry. Co. v. Matthews, 28 Tex. Civ. App. 92, 66 S. W. 592, 67 S. W. 788; St. L. & S. W. v. Roberts, 196 S. W. 1004; Corpus Christi Ry. v. Kjellberg, 185 S. W. 432; Peppercorn v. City, 89 Wis. 38, 61 N. W. 80, 46 Am. St. Rep. 818; Garside v. Ladd Watch Case Co., 17 R. I. 691, 24 Atl. 473; Gilbert v. State (Cr. App.) 215 S. W. 110. Without expressly approving the conclusion of the courts in all of these cases upon this subject as to the particular facts involved, we cite them as showing the trend of the decisions, especially where it is thought that the rights of parties have been disregarded.

In the instant case, without attempting to point out specifically wherein the misconduct complained of probably affected the jury's verdict, we are clearly of the opinion that it did probably influence the jury in respect to several material issues as to which the evidence was sharply conflicting. We are reluctant to disturb the finding of a trial judge on a matter of this kind, which is largely committed to his discretion, but when we are convinced that a party's rights have been disregarded, and that probable injury resulted from misconduct of the jury, we will not hesitate to review the trial court's action, and to reverse the case, since it thus appears that the discretion devolved by statute has been exceeded. Such is our conclusion in this case when all the acts of misconduct are considered, and, believing that the appellants have not had that fair and impartial trial which the spirit of our laws accords a litigant, and it being impossible to say how far the verdict of the jury was influenced in this case by what we regard as improper conduct of the jurors, although it may have been from no improper motive, we reverse the case for another trial.

Reversed and remanded.