**PLASTER v. ROPER et ux.**

No. 11193.

Court of Civil Appeals of Texas. Galveston.

June 19, 1941.

Rehearing Denied July 2, 1941.

Woodul, Arterbury & Folk, of Houston, for appellant.

Kemper, Hicks & Cramer, of Houston (John G. Cramer, of Houston, of counsel), for appellees.

CODY, Justice.

Appellant is a building contractor; and appellees have sued him for damages alleged to have resulted from defective workmanship and materials used by him in the construction of a house he contracted to build for them in the City of Houston ac-

**Phillip WOLFE et al., Appellants, v. Dr. John R. THOMAS et al., Appellees.**

No. 10965.

Court of Civil Appeals of Texas. San Antonio.

May 14, 1941.

cording to the plans and specifications prepared by S. R. Slaughter, an architect. Appellees have also sued the architect in this suit on the ground that, if it was found that the house was built according to the plans and specifications, the damages sued for resulted from negligence in preparing the plans and specifications.

No contention is made that the special issues submitted to the jury were not fully warranted by the pleadings of the parties, so it will be unnecessary to here set forth the issues made between the parties other than as they are reflected in the issues submitted to the jury, which, together with the answers thereto, are in substance as follows:

1. That appellant failed to construct one or more of the concrete piers under appellees' house in a good and workmanlike manner according to the plans and specifications relating to the construction of such piers.

2. That such failure proximately caused damage to the house.

3. That the cost of repairing the damage would amount to $793.56.

4. That the failure of the architect to provide for steel reinforcing rods to be placed in the concrete chain beam under the portion of appellees' house was negligence.

5. That the negligence of the architect caused such damage.

6. That the amount of money which would compensate appellees for the cost of making the repairs of such damage (resulting from the architect's negligence) was $144.36.

7. That the defective condition of the piers did not result solely from a shifting or settling of the soil surrounding them.

8. That the failure of appellant to construct some of the piers under appellees' house substantially in a good and workmanlike manner according to the plans and specifications relating to the construction of such piers did not cause all of the damage to the house.

9. That the damage to the concrete chain (which connected the piers and formed part of the foundation) did not result solely from an upheaval or contraction of the top soil.

Upon the verdict of the jury the court rendered judgment for appellees against appellant in the sum of $793.56; and further rendered judgment for appellees against the architect in the sum of $144.36. From such judgment the defendant, W. A. Plaster,

appellant here, alone appealed. The defendant S. R. Slaughter neither gave notice of appeal nor otherwise attempted to perfect an appeal to this Court from the $144.46 judgment so rendered against him below.

Appellant seeks to have the judgment reversed upon the ground, among others, that the jury's verdict was vitiated by jury misconduct, and in that connection submits two propositions, one of which reads as follows:

"Proposition No. 5.

"The plaintiff's testimony as to what the reasonable cost of repairing the alleged damages would be ranged from $1,400 to $1,600. On the other hand, defendant's testimony as to the reasonable cost of repairing the alleged defects, if any there were, ranged from $175 to $300, there was no middle ground. It was misconduct upon the part of the jury to disregard the testimony of both the defendant's witnesses and of the plaintiff's witnesses, and to base their verdict upon the testimony of one of their own number, who disregarded the testimony of the witnesses and figured the cost of remedying the alleged defects from his own skill and experience and from his own knowledge as to the cost of material, etc."

The misconduct complained of was testified to by the foreman, substantially as follows (on direct examination):

"So we conducted this jury according to Roberts' Rules of Order. In other words, one of the men made a motion that I be made foreman, and another man made a motion that another man be made foreman, and we voted and I was made foreman. One of the jurors remembered that I was a contractor and he made a motion that I calculate the value of this foundation. That motion was seconded and voted on. After the motion was passed by the jury, I then figured what it would cost to build a new foundation on a vacant lot. Of course, in trying to arrive at the value of this, before any calculations were made, the jury decided that if a new foundation was built on a vacant lot, and a brick wall that was damaged had been built on a new building that it would be adequate damage for this owner in this case, not considering that the present improvement over this foundation was faulty. At their request, I started from scratch, on a vacant lot, and figured what a foundation of this type would cost with a brick wall on it. I took a pencil and paper and figured out as I would as a con-

tractor, and I used my experience as a contractor. In other words, I think I knew how to figure that type of job. After I figured it, I told them the amount that I arrived at. This is the calculation made by me after the jury instructed me to do this. The net cost of the work, as estimated by me, was $536.30. The jury thought that anybody doing this work of building this foundation on this lot would be normally entitled to a 20 per cent profit, and we added that, which was $107.26. We added $107.26 to the amount I had arrived at. That made a total of $643.56. One of the jurors made a motion that we add $150.00 to that figure in order to equalize the thing. That motion was put to the jury and it passed. Then we added $150.00 to the figure that I had arrived at. My total was $643.56;—$150.00 added to that makes $793.56. This is the method by which the jury arrived at the amount they assessed against Mr. Plaster. They fixed that figure of $793.56 and I, as foreman, signed the verdict and returned it into Court."

On cross-examination, the foreman, substantially, testified as follows:

"These figures, here, (referring to the calculations made by the witness as shown by the actual sheets used by him in the jury room and which are attached to the statement of facts) don't have anything to do with the evidence in the case as I told. I heard Mr. Douthitt (one of the witnesses who testified upon the trial of the case) testify as to how much the new front footing and beam would cost. That testimony didn't have anything to do with these calculations. These calculations were not based on the evidence. These calculations were based upon my experience as to quantity and present cost.

"Q. But as to present costs, you had heard the testimony— A. This doesn't have anything to do with the testimony. * * *

"I made these calculations and figures right there in the presence of the jury. I did it at their request.

"Q. You gave them the benefit of your experience and showed them how you arrived at the $536.30, plus 20 per cent—A. I didn't put the 20 percent on there.

"Q. What is this? (Referring to the item of 20 percent on page No. 1 of the Calculation sheet referred to). A. That is 20 percent on there, but that was the jury's

suggestion that that be added. They added a profit of 20 percent to the figure I gave them. That made $643.56. After I figured it up, I showed them my paper."

■ The foregoing testimony is not disputed, and we disallow appellees' contention to the contrary. What was said in Southern Traction Co. v. Wilson, Tex.Com.App., 254 S.W. 1104, 1105, is equally applicable here:

"Applying the rule laid down by our Supreme Court in the Gray Case [Houston & T. C. Railway Co. v. Gray, 105 Tex. 42, 143 S.W. 606], the court itself will set aside a judgment and order a new trial, where all the evidence, considered as a whole, taken by the trial judge on the hearing of the motion for a new trial, leaves it reasonably doubtful to the Supreme Court as to whether or not the improper conduct of the jurors affected the amount of the verdict. The Supreme Court will not look to one portion of the evidence alone, or to another part alone. But it will and should consider the record as a whole upon the point in controversy. * * *

"Under our system of jurisprudence, parties litigant are entitled to a verdict returned by each of the twelve jurors solely upon the law and the evidence permitted by the court to be introduced upon the trial. If outside matters are discussed in the jury room, and its effect upon the verdict is reasonably doubtful, the doubt should be resolved in favor of keeping jury verdicts free from suspicion and in favor of those against whom the improper conduct was committed. If verdicts of juries are to continue to be respected, as they should be, they must be safeguarded with eternal vigilance from every outside influence of any character."

See, also, Dunaway v. Austin St. R. Co., Tex.Civ.App., 195 S.W. 1157; German v. Houston & T. C. R. Co., Tex.Civ.App., 222 S.W. 662; Finlay-Tampico Oil Co. v. Robbins, Tex.Civ.App., 246 S.W. 1047.

■ It being necessary to reverse the judgment for misconduct of the jury, the discussion of the remaining points raised by appellant would be merely of academic interest, and will be foreborne.

Therefore, the judgment, in so far as the same was appealed from, will be reversed, and the cause as between appellant and appellees remanded for a new trial. It will be so ordered.

Reversed and remanded.